FILED

1  LIONEL Z. GLANCY (#134180)
2  MICHAEL GOLDBERG (#188669)
   MARC L. GODINO (#182689)
3  CASEY E. SADLER (#274241)
   **GLANCY BINKOW & GOLDBERG LLP**
4  1925 Century Park East, Suite 2100
   Los Angeles, CA  90067
5  Telephone: (310) 201-9150
   Facsimile: (310) 201-9160
6  E-mail: info@glancylaw.com

7  *Attorneys for Plaintiff David Takeda*

8

13 SEP 11 PM 1:56

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

9              UNITED STATES DISTRICT COURT

10           FOR THE CENTRAL DISTRICT OF CALIFORNIA

11  DAVID TAKEDA, on Behalf of Himself  )   CASE NO. CV13-6656 PSG (JEMx)
12  and All Other Persons Similarly Situated,  )
                                            )   **CLASS ACTION COMPLAINT**
13              Plaintiff,                   )   **FOR DAMAGES, EQUITABLE,**
                                            )   **DECLARATORY AND**
14          v.                              )   **INJUNCTIVE RELIEF**
                                            )
15  QUEST NUTRITION, LLC, and               )
16  GENERAL NUTRITION CENTERS,              )   **JURY TRIAL DEMANDED**
    INC.,                                   )
17                                          )
                                            )
18              Defendants.                 )
                                            )

19

20

21

22

23

24

25

26

27

28

---

**CLASS ACTION COMPLAINT**

1      Plaintiff David Takeda ("Plaintiff"), by his attorneys, alleges upon personal

2 knowledge as to his own acts, and as to all other matters upon information and belief

3 based upon, *inter alia,* the investigation made by and through his attorneys.

## INTRODUCTION

5      1.    Plaintiff brings this action on behalf of himself and a class of all

6 customers in the United States who purchased Quest Nutrition, LLC's ("Quest" or

7 the "Company") Subject Bars, as defined herein (the "Class").

8      2.    Plaintiff and the Class have been harmed by Quest's mislabeling and

9 improper marketing of its QuestBars (the "Subject Bars").[1]  In particular, and as

10 alleged in greater detail below, Quest makes certain claims about the dietary fiber

11 (isomalto-oligosaccharide or "IMO" is the primary ingredient that Quest uses for its

12 dietary fiber claims) and "active carbohydrate" (*i.e.,* digestible, blood glucose

13 yielding dietary carbohydrates) content of its Subject Bars.  However, the dietary

14 fiber content is dramatically overstated and the active carbohydrate content of the

15 Subject Bars is materially understated.  In fact, when the Subject Bars are subjected

16 to quantitative nutrient analyses, the results show that the Subject Bars actual fiber

17 content is overstated anywhere from 50% to 10-fold depending on the particular

18 industry-accepted methodology implemented.  Thus, for these reasons and those

19 discussed more fully below, Plaintiff seeks damages, equitable relief and/or

20 disgorgement on behalf of himself and the proposed Class.

21      3.    Plaintiff asserts claims individually and on behalf of all others similarly

22 situated under the Unfair Competition Law, California *Business and Professions*

23 *Code* § 17200, *et seq.* ("UCL" or "Section 17200"), and the Consumers Legal

---

[1]  The Subject Bars include Quest's Vanilla Almond Crunch, Peanut Butter Supreme, Chocolate Brownie, Apple Pie, Mixed Berry Bliss, Peanut Butter & Jelly, Chocolate Peanut Butter, Cinnamon Roll, Coconut Cashew, Strawberry Cheesecake, Lemon Cream Pie, Peanut Butter & Jelly flavored Law Carb Protein Bars.

**CLASS ACTION COMPLAINT**

1  Remedies Act, California *Civil Code* § 1750 *et seq.* (the "CLRA").  Additionally,

2  Plaintiff alleges that defendants' conduct constituted breach of contract and unjust

3  enrichment.

4  **JURISDICTION AND VENUE**

5      4.    This Court has subject matter jurisdiction over this action pursuant to 28

6  U.S.C. § 1332(d)(2), because the matter in controversy, upon information and belief,

7  exceeds $5,000,000, exclusive of interests and costs, and this matter is a class action

8  in which Class members are citizens of a different state than that of defendants.  As

9  such, the amount in controversy exceeds the jurisdictional minimum of this Court.

10      5.    Further, this Court has jurisdiction over Quest and GNC (defined

11  below) (together, "Defendants") named herein because Defendants do sufficient

12  business in California, have sufficient minimum contacts with California or

13  otherwise intentionally avail themselves of the markets within California through

14  sales and marketing to render the exercise of jurisdiction by this Court permissible

15  under traditional notions of fair play and substantial justice.  Defendant Quest is

16  incorporated in California and according to its business listing with the California

17  Secretary of State, Quest's entity address is 4712 Admiralty Way, Suite 670, Marina

18  Del Rey, California 90292.  Additionally, the Subject Bars' packaging states that

19  they are distributed out of Marina Del Rey, California.  Defendant GNC also

20  maintains numerous stores within the state of California.

21      6.    Venue is also proper in this Court pursuant to 28 U.S.C. § 1391,

22  because the acts of Defendants occurred in this Judicial District.  Moreover, the

23  misconduct at issue had effects in this County.  Venue is also proper in this County

24  because Plaintiff resides in Los Angeles, Defendant Quest is located within Los

25  Angeles County and Defendant GNC maintains numerous retail stores within this

26  County.

27

28

**CLASS ACTION COMPLAINT**

**THE PARTIES**

7.     Plaintiff David Takeda purchased the Subject Bars and was damaged by Defendants' mislabeling and improper marketing of the Subject Bars as alleged herein.  Plaintiff David Takeda is currently a resident of Los Angeles, California.

8.     Defendant Quest, which distributes protein bars under the brand name Quest Bars, is a sports nutrition corporation based in Marina Del Rey, California, with its website located at www.questproteinbar.com.  There are two lines of Quest Bars: the "original" and "all natural" lines.  The Company sells its Quest Bars online and through affiliated retail locations, including stores owned by GNC and the Vitamin Shoppe.  According to the California Secretary of State's business database, Quest's principle entity address is 4712 Admiralty Way, Suite 670, Marina Del Rey, California 90292.  Additionally, according to the packaging on the Subject Bars, the Subject Bars are distributed out of Marina Del Rey, California 90292.

9.     Ronald J. Penna ("Penna") is the Chief Executive Officer of Quest. While not named as a defendant in this action, it is worth noting Mr. Penna's business background, as described by former employees of Website Results - a company founded by Penna in the late 1990's.  *See* "Dot-com noir, When Internet Marketing goes sour: A sordid tale of spyware, 'junk traffic,' bodybuilding and a half-baked plan for Hollywood glory," written by Brian McWilliams, July 1, 2002, Salon.com.[2]

10.     Defendant General Nutrition Centers, Inc. ("GNC") is a Delaware corporation with its principle executive offices located at 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222.[3]  According to its website (www.gnc.com), GNC is

---

[2] *See* http://www.salon.com/2002/07/01/spyware_inc/.

[3] General Nutrition Centers, Inc., is a wholly owned subsidiary of GNC Holdings, Inc.

**CLASS ACTION COMPLAINT**

a leading global specialty retailer of health and wellness products, including vitamins, minerals, and herbal supplement products, sports nutrition products and diet products.  As of March 31, 2013, GNC had more than 8,200 locations, of which more than 6,200 retail locations are in the United States (including 958 franchise and 2,190 Rite Aid franchise store-within-a-store locations) and franchise operations in 55 countries (including distribution centers where retail sales are made).  GNC purports to be dedicated to helping consumers Live Well – has a diversified, multi-channel business model and derives revenue from product sales through company-owned retail stores, domestic and international franchise activities, third party contract manufacturing, e-commerce and corporate partnerships.  According to GNC, it has a broad and deep product mix, which is focused on high-margin, premium, value-added nutritional products, and is sold under GNC proprietary brands, including Mega Men®, Ultra Mega®, Total LeanTM, Pro Performance®, Pro Performance® AMP, Beyond Raw®, and under nationally recognized third party brands.

## CLASS ACTION ALLEGATIONS

11.    Plaintiff brings this lawsuit, both individually and as a class action on behalf of similarly situated customers of Quest, pursuant to *Federal Rules of Civil Procedure* 23(a) and (b).  The proposed Class consists of:

> All individuals in the United States who purchased the Subject Bars. Excluded from the proposed Class are Defendants, their respective officers, directors, and employees, and any entity that has a controlling interest in Defendants. Plaintiff reserves the right to amend the Class definition as necessary.

12.    **Numerosity**:    Upon information and belief, the Class comprises thousands of consumers throughout the United States and is so numerous that joinder of all members of the Class is impracticable.  While the exact number of Class members is presently unknown and can only be ascertained through discovery,

Plaintiff reasonably believes that there are at least tens of thousands of Class members.

13.     **Common Questions of Law and Fact Predominate:** There are questions of law and fact common to the Class, which predominate over any individual issues, including, but not limited to:

(A)     Whether Defendants engaged in the conduct alleged herein;

(B)     Whether Defendants' practices were deceptive, unfair, improper and/or misleading;

(C)     Whether Defendants' conduct as alleged herein constitutes breach of contract;

(D)     Whether Defendants' conduct as alleged herein constitutes unjust enrichment;

(E)     Whether Defendants' conduct as alleged herein violated the UCL, California *Business & Professions Code* § 17200 *et seq.*;

(F)     Whether Defendants' conduct violated the CLRA, California *Civil Code* § 1750 *et seq.*;

(G)     Whether Defendants' conduct as alleged herein resulted in unjust enrichment to the detriment of the Class;

(H)     Whether Defendants' conduct as alleged herein resulted in breach of contract to the detriment of the Class;

(I)     Whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

(J)     Whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

14.     **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class have been similarly affected by Defendants' common course of conduct since they all relied on Defendants'

6

representations concerning their products and purchased the products based on those representations.

15.     **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interest of the Class.  Plaintiff has retained counsel with substantial experience in handling complex class action litigation.  Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so.

16.     **Superiority of the Class Action**: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member resulting from Defendants' wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.  Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.   In addition, Defendants have acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

17.     Unless a class is certified, Defendants will retain monies they took from Plaintiff and the proposed Class by means of their unlawful conduct. Unless an injunction is issued, Defendants will continue to commit the alleged violations, and the members of the Class and the general public will continue to be misled.

## FACTUAL ALLEGATIONS

18.     The protein/energy bar marketplace is one of the fastest growing segments of the health food industry. It is estimated that the total U.S. retail sales in the nutrition/energy bar category was $2.5 billion in 2011, with the category growing 16% from 2010 to 2011, and that the total retail sales will approach $4.5 billion by 2016.

19.     As the marketplace has significantly grown in recent years, there has been a massive increase in the number of different protein bars available for purchase. The companies producing and marketing these protein bars attempt to differentiate themselves through aggressive marketing campaigns. Moreover, these marketing campaigns focus on different factors such as high fiber, low carbohydrates, high protein, low sugar content, and so on. One such company that engages in such a marketing approach is Quest.

20.     Dietary fiber constitutes the portion of carbohydrates in the diet that are not digested in the human gastrointestinal system.

21.     Procedures developed for measuring dietary fiber in foods include a system for simulating human GI digestion of the digestible portion of a food's total carbohydrate content. The sugars resulting from the *in vitro* digestion are rinsed from the sample and the remaining non-digestible carbohydrate is measured as dietary fiber.

22.    The AOAC[4] 991.43 Dietary Fiber in Food ("AOAC 991.43") measurement method was developed explicitly to measure the "dietary fiber" naturally present in types of foods traditionally recognized as being good sources of dietary fiber.[5]   At the time it was developed there were **no** dietary fiber-fortified foods, nor the novel, manufactured fiber-like food ingredients which are available today.  This methodology was not intended to include very soluble, low molecular weight carbohydrate substances such as IMO.  As such, interest in newer methods for measuring dietary fiber came along with the commercial development of fiber-like ingredients such as digestion-resistant starch and non-digestible oligosaccharides.

23.    The AOAC 2009.01 Dietary Fiber in Food ("AOAC 2009.01") measurement method was developed to **include** fiber-like substances such as the resistant starches and soluble digestion-resistant oligosaccharides (although IMO is an oligosaccharide substance; at issue is the extent to which it is digestion-resistant). AOAC 2009.01 would be an appropriate method for measuring the dietary fiber content of foods formulated with digestion-resistant oligosaccharides such as IMO.

24.    In the mid-20th Century, it became apparent that among populations who consumed minimally processed, plant food-based diets, there was a much lower incidence of many of the chronic diseases plaguing Western populations.  It was suspected that the dietary fiber content of the plant-based diets might be a major factor contributing to chronic disease protection.

25.    Hence, growing interest in researching the dietary fiber-disease incidence relationship led to debates as to what constitutes the "fiber" portion of plant-based diets.  By around 1970, the consensus was that "Dietary fiber consists of

[4] For a description and background of AOAC International, *see* www.aoac.org.

[5] 991.43 supported the Trowell dietary fiber definition as detailed below.

**CLASS ACTION COMPLAINT**

1 the remnants of edible plant cells, polysaccharides, lignin, and associated substances
2 resistant to hydrolysis digestion by the alimentary enzymes of humans" (the
3 "Trowell" definition).

4    26.    The U.S. Food and Drug Administration ("FDA") nutrition labeling
5 regulations, issued January 1993, require dietary fiber content to be listed in the
6 nutrition information on food labels.  At the proposed rule stage of the current FDA,
7 it had specified that dietary fiber would be measured by the 991.43 procedure.[6]

8    27.    Technically, the amount of dietary fiber declared on a food label must
9 match the amount of fiber that will be measured under AOAC 991.43.

10    28.    In the 1990s, a movement was beginning among food & nutrition
11 professional associations to develop an international consensus as to how dietary
12 fiber should be defined and to develop an appropriate analytical method to fit the
13 consensus definition.  These actions culminated in a dietary fiber definition being
14 adopted by the CODEX Alimentarius Committee in 2009 and with the AOAC
15 2009.01 analytical method now accepted as an AOAC Official Method.  The 2009
16 CODEX dietary fiber definition is as follows:

WHO/FAO  CODEX Alimentarius Dietary Fiber Definition (adopted 2009
ALINORM 09/32/REP; modified 2010 ALINORM 10/33/26, 10/33/REP)
CODEX defines dietary fiber as carbohydrate polymers[a] with ten or more
monomeric units,[b] which are not hydrolyzed by the endogenous enzymes in
the small intestine of humans and belong to the following categories:

- Edible Carbohydrate polymers naturally occurring in the food as
  consumed,

- Carbohydrate polymers, which have been obtained from food raw
  material by physical, enzymatic or chemical means and which have

---

[6]   Actually, the specified procedure, "Enzymatic, Gravimetric Dietary Fiber in
Foods" method was an earlier version of 991.43.  This method has had several
technical improvements and these revisions get assigned new AOAC Official
Methods numbers; but, all the revisions give the same total dietary fiber
measurement.

**CLASS ACTION COMPLAINT**

been shown to have a physiological effect of benefit to health as demonstrated by generally accepted scientific evidence to competent authorities,

- Synthetic carbohydrate polymers which have been shown to have a physiological effect of benefit to health as demonstrated by generally accepted scientific evidence to competent authorities,

[a] When derived from a plant origin, dietary fiber may include fractions of lignin and/or other compounds associated with polysaccharides in the plant cell walls. These compounds also may be measured by certain analytical method(s) for dietary fiber. However, such compounds are not included in the definition of dietary fiber if extracted and re-introduced into a food.

[b] Decision on whether to include carbohydrates of 3 to 9 monomeric units should be left up to national authorities.

29.     In the absence of a clear FDA regulatory policy on a definition for dietary fiber, the 2009 CODEX dietary fiber definition is the most likely standard to evaluate whether the Subject Bars' IMO is dietary fiber.

30.     Quest sells its protein bars both online and through affiliated retail locations, such as GNC and the Vitamin Shoppe.  Quest has two lines of protein bars: the "Original Line" and the "All Natural Line."  As Quest explains, "Our 99.95% Natural [the Original Line] and 100% Natural Lines are almost identical. Both lines have the same perfect nutritional profile so you can pick your preferred sweeteners!"[7]  A comparison of the wrappers of the Subject Bars shows that the difference between the lines of bars is that one contains the sweetener "Sucralose" while the other contains the sweetener "Stevia."

31.     As noted above, in order to market its protein bars and differentiate its products in the crowded protein bar marketplace, Quest touts that its Subject Bars have a variety of characteristics that make them better than its competitor's products.

[7] Available at http://www.questproteinbar.com/.

**CLASS ACTION COMPLAINT**

For example, on its website, Quest markets the Subject Bars by stating:

**EXPECT LESS**

THE PROTEIN BAR FAMOUS FOR WHAT IT DOES **NOT** HAVE

-**NO** Sugar Alcohols (Original Line)          -**NO** Glycerine

-**NO** Sugar Used          -**NO** Junk Ingredients

-**NO** Artificial Sweeteners (All Natural Line)          -**NO** Soy Protein

-Gluten Free          -Only **4-6g** Non-Fiber Carbs

(Emphasis in Original).[8]

32.    Additionally, Quest markets the Subject Bars as a tool for weight loss by touting the Subject Bars high fiber content:

Losing Fat With Quest Bars
If you're looking to get leaner, our bars let you do just that - with the added convenience of being able to quickly get a meal on the go. As the only truly low carb bar on the market that's made with real food ingredients.  Plus, many customer's have used the world's easiest diet plan by simply replacing one or more meals with a Quest Bar.  It's the easiest and most delicious way you'll ever lose body fat.

*Quest Bars will also curb your hunger more effectively than most foods. Because they are packed with fiber, you'll find that they are very filling.* The natural fats and proteins will further keep your appetite satisfied for hours - making sure that you can easily stay away from eating higher calorie, less nutritious fare.

(Emphasis added).[9]

33.    Quest also touts the Subject Bars ability to help consumers add muscle due to its low calorie and low carbohydrate nature:

Adding Muscle with Quest Bars
If you're trying to add muscle, about the only thing that everyone can agree on is that you're going to need protein to do it.  Getting in the right amount of protein isn't easy - especially if you're on the run or don't have time to prepare your own meals.  *Getting in your protein without*

---

[8] Available at http://www.questproteinbar.com/.

[9] Available at http://www.questproteinbar.com/why-choose-quest/.

12

**CLASS ACTION COMPLAINT**

*taking in a lot of extra calories is very difficult if you're not preparing your own meals and Quest Bars help you get in the protein you need while keeping the calories down. And by almost eliminating carb calories - we help ensure that the pounds you do put on are muscle - not fat.* Adding muscle is hard work but eating Quest Bars will make the job just a bit easier because you'll actually look forward to eating them.

(Emphasis added).[10]

34.    Moreover, Quest actively marketed and represented that the Subject Bars had "2-6g [of] Active Carbs," which is the number of total carbohydrates minus the amount of dietary fiber in the bar.

35.    As the Company's website states:

**Control Your Carbs To Reach Your Goals**
**Q: Why do your bars have so few carbs?**

*A: As most people know, if you want to stay healthy, lose fat or build LEAN, fat-free muscle, you must control your carb intake. That's why we've worked so hard to create bars with so few grams of available carbohydrates (almost all of Quest Bar's carbs come from inert fiber which helps keep you full but doesn't skyrocket your insulin levels.)*

**Q: If low carb food is the key to my success, why do other nutrition bars have so many carbs or sugar alcohols?**

A: Because until now, there was no other way to make a bar that tasted good and didn't rot on the shelf. We had to create a process so unique that we protected it by filing a patent. That's why you won't see any other bars like ours on the market. *Quest is the first truly low carb bar with no simple carbs or harmful sugar alcohols.* A perfect meal in your pocket!

(Emphasis added).[11]

36.    Quest's representations were not only listed on its website. The boxes in which the Subject Bars were sold similarly touted their "perfect" nutritional profile and told consumers to "never compromise." For example, the boxes stated:

---

[10] Available at http://www.questproteinbar.com/why-choose-quest/.

[11] Available at http://www.questproteinbar.com/.

**CLASS ACTION COMPLAINT**

The ONLY protein bar with a **PERFECT** nutritional profile.

**Quest is the first bar you can eat guilt FREE**

TO BRING YOU A BAR THIS HEALTHY AND THIS TASTY, WE HAD TO CREATE A WHOLE NEW PROCESS FOR MAKING BARS. QUEST IS SO REVOLUTIONARY, IN FACT, THAT WE'VE FILED A PATENT. THAT'S WHY YOU WON'T SEE ANYTHING ELSE LIKE IT ON THE MARKET. QUEST IS THE FIRST TRULY LOW CARB BAR THAT DOESN'T CONTAIN GLYCERIN, SIMPLE CARBS, USES NO SUGAR OR ARTIFICIAL SWEETENERS. QUEST BARS ARE THE ONLY BARS THAT YOU CAN EAT WITHOUT FEELING GUILTY.

**NEVER COMPROMISE!**

37.    However, the Subject Bars actually contained larger caloric content and lesser amounts of dietary fiber than Quest represented.

38.    Based on information and belief, Plaintiff alleges that certain Subject Bars understated their calories by at least 20% and overstated their dietary fiber by more than 750%.

39.    Since Quest's marketing relied on the overstatement of the amount of dietary fiber of the Subject Bars, it likewise falsely marketed the amount of "active carbs" of the Subject Bars and the various health properties attributed thereto. Combined with the underrepresentation of the Subject Bars caloric content, Quest's health claims and marketing representations were both false and misleading.

40.   Moreover, the increase in "active carbs" means that the Subject Bars have a larger impact on blood sugar and insulin than the marketing for the Subject Bars implied.   Failing to properly label these sugars and carbohydrates makes the "active carbs" labeling both false and misleading.

### Plaintiff's Purchase of the Subject Bars

41.   Plaintiff David Takeda repeatedly purchased the Subject Bars because of its labeling regarding its carbohydrate and dietary fiber content.   For example, on August 22, 2012, Plaintiff purchased nine of the Subject Bars from one of GNC's stores located in Sherman Oaks, California.

42.   Had the Subject Bars been accurately and properly labeled and marketed, he would not have bought the Subject Bars.

43.   Thus, since Quest mislabeled and failed to disclose the true nature of the Subject Bars, and GNC sold the mislabeled Subject Bars, Defendants have improperly deprived Plaintiff of significant funds.

### FIRST CAUSE OF ACTION

### Unfair Business Practices Act

### California *Business & Professions Code* § 17200 *et seq.*

44.   Plaintiff, on behalf of himself and on behalf of all others similarly situated, realleges and incorporates herein by reference each of the foregoing paragraphs.

45.   The Unfair Business Practices Act defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business or practice.   Cal. Bus. & Prof. Code § 17200, *et seq.*   Unfair competition also includes "unfair, deceptive, untrue or misleading advertising."   The Act also provides for injunctive relief and restitution for violations.

46.     Defendants committed acts of unfair competition, as defined by California *Business & Professions Code* § 17200, by falsely labeling the Subject Bars.

47.     Defendants' conduct is unfair in that the harm to Plaintiff and the Class arising from it outweighs the utility, if any, of those practices.

48.     Defendants' conduct was fraudulent and likely to deceive reasonable consumers in that Defendants omitted and/or failed to disclose material facts regarding the Subject Bars.  Defendants' failure to disclose the true contents of its Subject Bars constitutes deception by omission.  Defendants had a duty to disclose these material facts.

49.     The facts concealed and omitted are material facts in that a reasonable consumer would have considered them important in deciding whether or not to purchase the Subject Bars.

50.     As a result of Defendants' practices, Plaintiff suffered injury in fact and lost money or property.  As a direct and proximate result of the acts and practices alleged above, pursuant to California *Business & Professions Code* § 17203, Plaintiff and the Class are therefore entitled to: (a) an Order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of its deceptive practices, including, but not limited to, disgorgement of all profits derived from the sale of the Subject Bars; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia,* California *Code of Civil* Procedure § 1021.5.

**CLASS ACTION COMPLAINT**

## SECOND CAUSE OF ACTION

### Deceptive Practices

### Consumers Legal Remedies Act, California *Civil Code* § 1750 et seq.

51.    Plaintiff, on behalf of himself and on behalf of all others similarly situated, realleges and incorporates herein by reference each of the foregoing paragraphs.

52.    At all relevant times, Plaintiff and each proposed Class member was a "consumer," as that term is defined in California *Civil Code* § 1761(d).

53.    At all relevant times, the Subject Bars constituted "goods," as that term is defined in Civ. Code § 1761(a).

54.    At all relevant times, Quest and GNC were "persons," as that term is defined in Civ. Code § 1761(c).

55.    At all relevant times, Plaintiff's and each proposed Class Member's purchase of a Subject Bar constituted a "transaction," as that term is defined in Civ. Code § 1761(e).

56.    Defendants' practices, acts, policies, and course of conduct violated the CLRA in that Defendants' represented that its Subject Bars characteristics, uses and benefits which they do not have, in violation of § 1770(a)(5) of the CLRA.

57.    Defendants' practices, acts, policies, and course of conduct violated the CLRA in that Defendants improperly represented that its Subject Bars were of a particular standard, quality, or grade, in violation of § 1770(a)(7) of the CLRA.

58.    Defendants' practices, acts, policies, and course of conduct violated the CLRA in that Defendants represented that its goods had characteristics with the intent not to sell them as advertised, in violation of § 1770(a)(9) of the CLRA.

59.    Defendants' practices, acts, policies, and course of conduct violated the CLRA in that Defendants represented that a transaction confers or involves rights,

17

remedies, or obligations which it does not have, in violation of § 1770(a)(14) of the CLRA.

60.     Plaintiff seeks restitution of all monies received by Defendants as a result of its improper sale of the mislabeled Subject Bars as provided in California Civil Code § 1780.   Plaintiff is informed and believes that the amount of said restitution is unknown at this time, but will seek relief to amend this complaint at the time of trial when the same has been ascertained.

61.     Plaintiff seeks, among other things, injunctive relief and damages for the CLRA claims alleged in this Complaint. Plaintiff's counsel served on Defendants, prior to the filing of this Complaint, a CLRA notice letter in accordance with California *Civil Code* § 1782(a).   As of the filing of this Complaint, Defendants have not rectified the issues complained of herein whatsoever, let alone within the appropriate time period outlined in the CLRA.

### THIRD CAUSE OF ACTION

### Unjust Enrichment

62.     Plaintiff, on behalf of himself and on behalf of all others similarly situated, realleges and incorporates herein by reference each of the foregoing paragraphs.

63.     To the detriment of Plaintiff and members of the Class, Defendants have been, and continue to be, unjustly enriched as a result of the unlawful and/or wrongful acts described herein, and continue to benefit at the expense and detriment of Plaintiff and members of the Class.

64.     Defendants have benefited from their unlawful acts, and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the unlawful or wrongful acts described herein.

## FOURTH CAUSE OF ACTION

### Breach of Contract

65.    Plaintiff, on behalf of himself and on behalf of all others similarly situated, realleges and incorporates herein by reference each of the foregoing paragraphs.

66.    Plaintiff and the members of the Class entered into a contract with Defendants through their purchase of the Subject Bars.

67.    Implied in the contract between customers and Defendants was that the Subject Bars were labeled accurately and properly.

68.    Defendants breached these contracts by mislabeling the true contents of the Subject Bars and/or selling the mislabeled Subject Bars.

69.    As a direct and proximate result of Defendants' breaches of contract, Plaintiff and Class Members have been damaged in amounts to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests on behalf of himself and other members of the Class, for judgment against Defendants as follows:

1.    For preliminary and permanent injunctive relief enjoining Defendants, their agents, servants and employees, and all persons acting in concert with Defendants, from engaging in, and continuing to engage in, the unfair, unlawful and/or fraudulent business practices alleged above and that may yet be discovered in the prosecution of this action;

2.    For certification of the putative Class;

3.    For damages, restitution and disgorgement of all money or property wrongfully obtained by Defendants by means of their herein-alleged unlawful, unfair, and fraudulent business practices;

**CLASS ACTION COMPLAINT**

4.      Recovery of the amounts by which Defendants have been unjustly enriched;

5.      For an accounting by Defendants for any and all profits derived by Defendants from their herein-alleged unlawful, unfair and/or fraudulent conduct and/or business practices;

6.      For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, California *Code of Civil Procedure* § 1021.5 and the common law private attorney general doctrine;

7.      For costs of suit; and for such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: September 11, 2013              **GLANCY BINKOW & GOLDBERG LLP**

By:
Lionel Z. Glancy
Michael Goldberg
Marc L. Godino
Casey E. Sadler
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: info@glancylaw.com

*Attorneys for Plaintiff David Takeda*

**CLASS ACTION COMPLAINT**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Philip S. Gutierrez_____ and the assigned Magistrate Judge is _____John E. McDermott_____ .

The case number on all documents filed with the Court should read as follows:

### 2:13CV6656 PSG JEMx

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____September 11, 2013_____
Date

By  J.Prado_____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| [x] Western Division<br>312 N. Spring Street, G-8<br>Los Angeles, CA 90012 | [ ] Southern Division<br>411 West Fourth St., Ste 1053<br>Santa Ana, CA 92701 | [ ] Eastern Division<br>3470 Twelfth Street, Room 134<br>Riverside, CA 92501 |
|---|---|---|

**Failure to file at the proper location will result in your documents being returned to you.**

---

CV-18 (08/13)                         NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

Name & Address:
MARC L. GODINO (#182689)
GLANCY BINKOW & GOLDBERG LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

DAVID TAKEDA, on Behalf of Himself and All
Other Persons Similarly Situated,

PLAINTIFF(S)

v.

QUEST NUTRITION, LLC, and GENERAL
NUTRITION CENTERS, INC.,

DEFENDANT(S).

CASE NUMBER

CV13-6656 PSG (JEMx)

**SUMMONS**

TO:   DEFENDANT(S):  QUEST NUTRITION, LLC; GENERAL NUTRITION CENTERS, INC.

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Marc L. Godino_____, whose address is _1925 Century Park East, Suite 2100, Los Angeles, CA 90067, Tel. (310) 201-9150_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

SEP 1 1 2013

Dated: _____

Clerk, U.S. District Court

By: _____
        Deputy Clerk

        (Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| DAVID TAKEDA | QUEST NUTRITION, LLC, and GENERAL NUTRITION CENTERS, INC. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>MARC L. GODINO (#182689), GLANCY BINKOW & GOLDBERG LLP<br>1925 Century Park East, Suite 2100, Los Angeles, CA 90067, Tel. (310) 201-9150 | (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No ☒ **MONEY DEMANDED IN COMPLAINT: $** to be proved

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of California's Unfair Competition Law, Business and Professions Code Section 17200 and California's Consumer Legal Remedies Action, Civil Code Section 1750

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☒ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

FOR OFFICE USE ONLY:  Case Number:  CV13-6656

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ NO   ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Plaintiff David Takeda - Los Angeles County, CA | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Defendant Quest Nutrition, LLC - Los Angeles County, CA | Defendant General Nutrition Centers, Inc. -- Delaware |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____   DATE: September 11, 2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |