George C. Salmas (SBN 62616)
gsalmas@salmas-law.com
Michael R. Hambly (SBN 119834)
mhambly@salmas-law.com
SALMAS LAW GROUP
1880 Century Park East, Suite 611
Los Angeles, California 90067
Telephone: (310) 556-0721
Facsimile: (310) 788-8923

Attorneys for Defendants
QUEST NUTRITION, LLC and
GENERAL NUTRITION CENTERS, INC.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID TAKEDA, on behalf of himself and all other persons similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> QUEST NUTRITION, LLC, a California limited liability company; and GENERAL NUTRITION CENTERS, INC., a Delaware corporation, <br><br> Defendants. | **Case Number** <br><br> **2:13-cv-06656 PSG (JEMx)** <br><br> Hon. Philip S. Gutierrez <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO STAY OR DISMISS THE CASE PENDING FDA ACTION UNDER THE PRIMARY JURISDICTION DOCTRINE (MADE AS A MOTION FOR JUDGMENT ON THE PLEADINGS)** <br><br> **Date: December 1, 2014** <br> **Time: 1:30 p.m.** <br> **Courtroom: 880** <br> **The Hon. Philip S. Gutierrez** <br><br> Action Filed: September 11, 2013 <br> Trial Date: April 7, 2015 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION                                                          1

II.  PLAINTIFF'S ALLEGATIONS IN THE COMPLAINT ARE
     FOCUSED ON QUEST'S FIBER LABELING FOR ITS
     PROTEIN BARS.                                                        5

III. ON MARCH 3, 2014, THE FDA PUBLISHED A PROPOSED
     RULE THAT WILL REVISE LABELING REGULATIONS,
     INCLUDING THOSE RELATING TO DIETARY FIBER
     CONTENT.                                                            10

IV.  UNDER THE PRIMARY JURISDICTION DOCTRINE, A
     COURT MAY EXERCISE ITS DISCRETION TO STAY A CASE
     OR DISMISS IT WITHOUT PREJUDICE WHERE DEFERENCE
     TO AN ADMINISTRATIVE AGENCY IN THE FIRST INSTANCE
     IS APPROPRIATE, ESPECIALLY WHERE THE AGENCY IS
     ACTIVELY CONSIDERING MATTERS RELEVANT TO A KEY
     ISSUE IN THE CASE.                                                  15

V.   THE RECENT USE OF THE PRIMARY JURUSDICTION
     DOCTRINE BY MANY JUDGES IN ORDER TO DEFER TO
     THE FDA IN THE EVAPORATED CANE JUICE CLASS ACTION
     CASES IS INSTRUCTIVE AS TO THE WISDOM OF APPLYING
     THE DOCTRINE HERE.                                                  18

| | MEMORANDUM SUPPORTING DEF. PRIMARY JURISDICTION MOTION |
|---|---|

VI.  UNDER THE CIRCUMSTANCES, THIS COURT SHOULD
    EXERCISE ITS PLENARY DISCRETION TO STAY THIS CASE
    OR DISMISS IT WITHOUT PREJUDICE PENDING THE
    FINALIZING OF THE PROPOSED NEW REGULATIONS
    ON DIETARY FIBER AND AN FDA RESPONSE TO A
    CITIZEN PETITION BY QUEST CONCERNING THE IMO
    FIBER AT THE HEART OF PLAINTIFF'S MISLABELING
    CLAIMS.                                                        21

VII. CONCLUSION                                                    23

| | ii | MEMORANDUM SUPPORTING DEF. PRIMARY JURISDICTION MOTION |
|---|---|---|

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Astiana v. Hain Celestial Group, Inc.*,
    905 F.Supp.2d 1013 (N.D. Cal. 2012) ................................................................. 16

*Avila v. Redwood Hill*,
    2014 WL 2090045 (N.D. Cal. May 19, 2014) ...................................................... 20

*Clark v. Time Warner*,
    523 F.3d 1110 (9th Cir. 2008) .................................................................... 2, 15, 17

*Daniels-Hall v. National Education Association*,
    629 F.3d 992 (9th Cir. 2010) ................................................................................ 13

*Davel Communications, Inc. v. Qwest Corporation*,
    460 F.3d 1075 (9th Cir. 2006) ................................................................................ 3

*Figy v. Amy's Kitchen, Inc.*,
    2014 WL 3362178 (N.D. Cal. July 7, 2014) ......................................................... 3

*Figy v. Lifeway Foods*,
    2014 WL 1779251 (N.D. Cal. May 5, 2014)  .......................................... 14, 19, 22

*Greenfield v. Yucatan Foods, L.P.*,
    __ F.Supp.2d __, 2014 WL 1891140 (S.D. Fla. May 7, 2014) .......................... 17

*Haggag v. Welch Foods, Inc.*,
    2014 WL 1246299 (C.D. Cal. March 24, 2014) ........................................... 15, 23

*Heliotrope General, Inc. v. Ford Motor Co.*,
    189 F.3d 971 (9th Cir. 1999) .................................................................................. 4

*In re Amgen Inc. Securities Litigation*,
    544 F.Supp.2d 1009 (C.D. Cal. 2008) ................................................................. 14

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011)  .................................................................................. 4

*Morgan v. County of Yolo*,
    436 F.Supp.2d 1152 (E.D. Cal. 2006) ................................................................... 4

iii    MEMORANDUM SUPPORTING DEF.
       PRIMARY JURISDICTION MOTION

*Saubers v. Kashi Company*,
    2014 WL 3908595 (S.D. Cal. August 11, 2014) ................................................ 21

*Swearingen v. Attune Foods, Inc.*,
    2014 WL 2094016 (N.D. Cal. May 19, 2014) ............................................ 14, 19

*Syntek Semiconductor Co. Ltd. v. Microchip Technology Incorporated*,
    307 F.3d 775 (9th Cir. 2002) ...................................................... 5, 15, 16

*Taradejna v. General Mills, Inc.*,
    909 F.Supp.2d 1128 (D. Minn. 2012) .................................................. 17, 18, 22

*Thomas v. Financial Recovery Services*,
    2013 WL 387968 (C.D. Cal. January 13, 2013) ................................................... 4

*Watkins v. Vital Pharmaceuticals, Inc.*,
    2013 WL 5972174 (C.D. Cal. November 7, 2013) ...................................... 16, 22

**STATUTES AND RULES**

Business and Professions Code § 17200 ..................................................... 5

Civil Code § 1750 ..................................................................... 5

FDA Proposed Rule "Food Labeling: Revision of the Nutrition and
    Supplement Facts Labels" 79 Federal Register 11880 ................................ 10-13

Fed. R. Civ. P. 12(b)(6) ..................................................................... 2

Fed. R. Civ. P. 12(c) ..................................................................... 3

Fed. R. Evid. 201 ..................................................................... 13

**TREATISES**

W. Schwarzer, A.W. Tashima & J. Wagstaffe, <u>Rutter Group Practice</u>
    <u>Guide: Federal Civil Procedure Before Trial</u> ¶¶ 2:4621-2:4625, 9:319,
    9:339.1 (Rutter Group 2014) ................................................ 3, 4, 15

| | iv | MEMORANDUM SUPPORTING DEF. PRIMARY JURISDICTION MOTION |
|---|---|---|

R. Jones, G. Rosen, W. Wegner & J. Jones, <u>Rutter Group Practice</u>
<u>Guide: Federal Trials and Evidence</u> ¶¶ 8:849, 8:861, 8:863, 8:868, 8:874
(Rutter Group 2014) ............................................................................ 14

| | v | MEMORANDUM SUPPORTING DEF. PRIMARY JURISDICTION MOTION |
|---|---|---|

# I.

## INTRODUCTION

Plaintiff David Takeda seeks to represent a nationwide class of consumers who purchased Quest protein bars.  He asserts that the bars were mislabeled in terms of dietary fiber, carbohydrates, and calories because they contained a particular fiber called isomalto-oligosaccharide ("IMO").

In any eventual trial in this case, liability issues would be a battle of the experts on the nature of IMO, how it should be tested for fiber content, and what its impact should be on label information for fiber, carbohydrates, and calories.

When Mr. Takeda's Complaint was filed in September 2013, the federal Food and Drug Administration ("FDA") had no regulations defining dietary fiber.  However, in March 2014, the FDA published in the Federal Register a proposed Rule that will amend labeling regulations to define dietary fiber for the first time, address the measurement of fiber, and mandate that food companies using isolated fibers like IMO make submissions to the FDA for it to determine if they are "dietary fibers."

In light of the proposed new FDA regulations on dietary fiber, this Court should exercise its wide discretion to stay this case or dismiss it without prejudice under the primary jurisdiction doctrine.

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within

| | MEMORANDUM SUPPORTING DEF. PRIMARY JURISDICTION MOTION |
|---|---|

the special competence of an administrative agency."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  It is especially invoked in situations where, as here, an agency is actively considering matters directly relevant to litigation.  *See, e.g., Clark*, 523 F.3d at 1115 (dismissal affirmed where "the FCC's Notice of Proposed Rulemaking demonstrates that the agency is actively considering how it will regulate VoIP services").

The public comment period for the proposed Rule addressing dietary fiber closed on August 1, 2014.  Defendant Quest Nutrition, LLC ("Quest") intends to submit a citizen's petition (as provided for in the new fiber labeling regulations) regarding IMO as soon as the proposed Rule becomes final.  Both the proposed Rule, in which the FDA defines "dietary fiber," and whatever response the FDA ends up giving to Quest's upcoming citizen's petition on IMO will directly affect the fundamental liability issues in this case.

The procedural context for the question of whether or not a case should be stayed or dismissed under the primary jurisdiction doctrine is typically a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In that context, the questions before a court are "whether any set of facts could be proved which would avoid application of the doctrine [and] 'whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation.'"

| | 2 | MEMORANDUM SUPPORTING DEF. PRIMARY JURISDICTION MOTION |
|---|---|---|

*Davel Communications, Inc. v. Qwest Corporation*, 460 F.3d 1075, 1088 (9th Cir. 2006).

"Where the issues raised by a complaint necessarily implicate policy concerns requiring application of the primary jurisdiction doctrine, a federal court may suspend its resolution of those issues in favor of their referral to the governing agency." *Davel*, 460 F.3d at 1088.  "Referral" is not a direct transfer process by a court but rather involves the granting of a stay or dismissal, and then "'the parties are responsible for initiating the appropriate proceedings before the agency.'" *Id.* at 1087.[1]

The pleadings in this case were closed before the FDA issued its proposed Rule in March 2014, so a 12(b)(6) motion based on the new fiber regulations was not possible.  Thus, the primary jurisdiction issue is instead being raised in the procedural posture of this motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.

"In deciding a Rule 12(c) motion, the court applies the same standards applicable to a Rule 12(b)(6) motion [to dismiss]."  W. Schwarzer, A.W. Tashima & J. Wagstaffe, <u>Rutter Group Practice Guide: Federal Civil Procedure Before Trial</u> ("<u>Federal Civil Procedure</u>") ¶ 9:319 (Rutter Group 2014) ("Rules 12(b)(6)

---

[1] The current trend is to stay the court case rather than dismiss.  *See, e.g., Figy v. Amy's Kitchen, Inc.*, 2014 WL 3362178 at *4 (N.D. Cal. July 7, 2014) (court changed dismissal without prejudice to a stay with a scheduled joint status report).

and (c) are virtually interchangeable," with the latter applying after the pleadings are closed).

When considering a motion for judgment on the pleadings, just like with a Rule 12(b)(6) motion, a Court may consider not only the allegations on the face of the Complaint but also matters of which a Court may take judicial notice. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice'"); *Morgan v. County of Yolo*, 436 F.Supp.2d 1152, 1155 (E.D. Cal. 2006) (citing *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 & n.18 (9th Cir. 1999)); <u>Federal Civil Procedure</u> at ¶ 9:339.1.

As Judge Philip Gutierrez noted in *Thomas v. Financial Recovery Services*, 2013 WL 387968 (C.D. Cal. January 13, 2013), "It is well-settled that … matters that are subject to judicial notice may also be considered in evaluating a motion for judgment on the pleadings." *Id.* at *2. Defendants are concurrently filing a Request for Judicial Notice of FDA Materials.

Frankly, the Court's discretion under the primary jurisdiction doctrine is wide enough that it is highly unlikely the Court would be reversed for either

| | 4 | MEMORANDUM SUPPORTING DEF. PRIMARY JURISDICTION MOTION |
|---|---|---|

granting or denying the motion.[2]  However, Defendants believe that once the Court considers the circumstances, it will see the wisdom of granting the motion and deferring to the FDA's expertise in the first instance before a final judicial resolution of any remaining substantive issues in this case.

## II.

### PLAINTIFF'S ALLEGATIONS IN THE COMPLAINT ARE FOCUSED ON QUEST'S FIBER LABELING FOR ITS PROTEIN BARS.

In his Class Action Complaint (Docket No. 1) against Quest and retailer General Nutrition Centers, Inc. ("GNC"), Plaintiff David Takeda asserts claims on behalf of himself and a nationwide class of purchasers of Quest protein bars under California's statutory unfair competition law, Business and Professions Code § 17200 *et seq.*, and this state's Consumers Legal Remedies Act, Civil Code § 1750 *et seq.*, based on Quest's alleged improper labeling and marketing of Quest protein bars.

In Paragraph 2 of the Complaint, Plaintiff summarized the core liability issues in this case from his perspective.  He alleged: "Quest makes certain claims about the dietary fiber (isomalto-oligosaccharide or 'IMO' is the primary

---

[2]   Nonetheless, there can be situations where the need for an agency to deal with an issue in the first instance is so compelling that the Ninth Circuit will even invoke the doctrine *sua sponte* on appeal where the parties don't bring it up. *Syntek Semiconductor Co. Ltd. v. Microchip Technology Incorporated*, 307 F.3d 775, 780 & n.2 (9th Cir. 2002).

| | MEMORANDUM SUPPORTING DEF. PRIMARY JURISDICTION MOTION |

ingredient that Quest uses for its dietary fiber claims) and 'active carbohydrate' (i.e., digestible, blood glucose yielding dietary carbohydrates) content[3] of its Subject Bars.  However, the dietary fiber content is dramatically overstated and the active carbohydrate content of the Subject Bars is materially understated."  He continued: "In fact, when the Subject Bars are subjected to quantitative nutrient analyses, the results show that the Subject Bars actual fiber content is overstated anywhere from 50% to 10-fold depending on the particular industry-accepted methodology implemented."

Plaintiff stated that "[d]ietary fiber constitutes the portion of carbohydrates in the diet that are not digested in the human gastrointestinal system."  Complaint at ¶ 20.  "Procedures developed for measuring dietary fiber in foods include a system for stimulating human digestion of the digestible portion of a food's total carbohydrate content.  The sugars resulting from the *in vitro* digestion are rinsed from the sample and the remaining non-digestible carbohydrate is measured as dietary fiber."  Complaint at ¶ 21.

At Paragraphs 22 through 29 of his pleading, Mr. Takeda made assertions about various methods of measuring fiber that have been developed over the years and definitions of "dietary fiber" that have been proposed.  In assessing this

---

[3]  "Active carbohydrates" is "the number [in grams] of total carbohydrates minus the amount of dietary fiber."  Complaint at ¶ 34.

MEMORANDUM SUPPORTING DEF.
PRIMARY JURISDICTION MOTION

motion, the Court is requested to read those Paragraphs which, for the sake of brevity, will only be summarized here.

In Paragraph 22, Plaintiff alleged: "The AOAC 991.43 Dietary Fiber in Food … measurement method was developed explicitly to measure the 'dietary fiber' naturally present in types of foods traditionally recognized as being good sources of dietary fiber.  At the time it was developed there were no dietary fiber-fortified foods, nor the novel, manufactured fiber-like food ingredients which are available today."  Plaintiff observed: "This methodology was not intended to include very soluble, low molecular weight carbohydrate substances such as IMO."

Mr. Takeda noted that the "AOAC 2009.01 Dietary Fiber in Food … measurement method was developed to include fiber-like substances such as the resistant starches and soluble digestion-resistant oligosaccharides" and alleged that "AOAC 2009.01 would be an appropriate method for measuring the dietary content of foods formulated with digestion-resistant oligosaccharides such as IMO."  Complaint at ¶ 23.

Plaintiff alleged that the U.S. FDA "nutrition labeling regulations, issued January 1993, require dietary fiber content to be listed in the nutrition information on food labels."  Complaint at ¶ 26.  According to Plaintiff, "Technically, the

amount of dietary fiber declared on a food label must match the amount of fiber that will be measured under AOAC 991.43."  Complaint at ¶ 27.[4]

After mentioning one of the definitions of "dietary fiber" popular in the 1970s, Mr. Takeda then sets forth in Paragraph 28 a definition "adopted by the [international] CODEX Alimentarius Committee in 2009."  It states in part: "CODEX defines dietary fiber as carbohydrate polymers with ten or more monomeric units, which are not hydrolyzed by the endogenous enzymes in the small intestine of humans and belong to the following categories: [1] Edible Carbohydrate polymers naturally occurring in the food as consumed, [2] Carbohydrate polymers, which have been obtained from food raw material by physical, enzymatic or chemical means and which have been shown to have a physiological effect of benefit to health as demonstrated by generally accepted scientific evidence to competent authorities, [or 3] Synthetic carbohydrate polymers which have been shown to have a physiological effect of benefit to health as demonstrated by generally accepted scientific evidence to competent authorities."  A footnote to the CODEX definition states: "Decision on whether to

---

[4]  Whether or not Plaintiff's assertions about the definitions and measurement of dietary fiber were in fact true as of the Complaint's filing in September 2013 does not matter for purposes of the present motion (and thus Defendants will not address their substance herein).  What matters is that the Complaint is focused on such topics.

| | 8 | MEMORANDUM SUPPORTING DEF. PRIMARY JURISDICTION MOTION |

include carbohydrates of 3 to 9 monomeric units should be left up to national authorities."[5]

As the Court can see, the definition and measurement of dietary fiber are highly technical matters.  As of the time the Complaint was filed, the FDA had not established any definition of dietary fiber, something Plaintiff acknowledged.

In Paragraph 29, Plaintiff alleged: "In the absence of a clear FDA regulatory policy on a definition for dietary fiber, the CODEX dietary fiber definition is the most likely standard to evaluate whether the Subject Bars' IMO is dietary fiber."

Mr. Takeda has claimed that the Quest protein bars "actually contained larger caloric content and lesser amounts of dietary fiber than Quest represented" on labels and in its marketing.  Complaint at ¶¶ 37, 39.  "Based on information and belief, Plaintiff alleges that certain Subject Bars understated their calories by at least 20% and overstated their dietary fiber by more than 750%."  Complaint at ¶ 38.

Six months after the Complaint was filed, the FDA began an ongoing process to issue regulations on the definition and labeling of dietary fiber, addressed in the next Section.  The regulatory context for this case is thus in a state of flux, mooting some of Plaintiff's allegations.

---

[5]   A monomeric unit is a molecular unit that joins chemically with similar units to form a polymer.  A polymer is a large molecule composed of many repeating structural subunits.

| | 9 | MEMORANDUM SUPPORTING DEF. PRIMARY JURISDICTION MOTION |
|---|---|---|

# III.

# ON MARCH 3, 2014, THE FDA PUBLISHED A PROPOSED RULE THAT WILL REVISE LABELING REGULATIONS, INCLUDING THOSE RELATING TO DIETARY FIBER CONTENT.

On March 3, 2014, the FDA officially published in Volume 79 of the Federal Register (at pages 11880 through 11987) a proposed Rule entitled "Food Labeling: Revision of the Nutrition and Supplement Facts Labels" (to be codified as an amended version of 21 CFR Part 101) whereby regulations for nutritional labeling are to be revised.  The FDA invited public comment, with an extended period for comments closing on August 1, 2014.  *See* Exhibit B to the Defendants' Request For Judicial Notice (FDA Notice re extended comment period).

The Rule is over 100 pages long in the Federal Register and it covers a wide variety of topics, most of which have no pertinence to this case.  In light of that, and the massive file size of a scanned pdf of a document that long, Defendants are efiling only relevant excerpts of the Rule (with a copy of those excerpts— bracketed to indicate the most relevant passages—attached as Exhibit A to the concurrently-filed Request for Judicial Notice).[6]  However, as a courtesy, a

---

[6]  The excerpted pages of Volume 79 of the Federal Register are 11880-11884, 11899, 11909-11912, and 11959 (along with a cover page).  Some of those are pages directly relevant to labeling of fiber and others provide context.

complete hard copy of the entire proposed Rule is being provided to the Judge and Plaintiff's counsel.

The March 2014 proposed Rule on food labeling states that the FDA is defining "dietary fiber" for the first time.  The Rule addresses dietary fiber and other non-digestible carbohydrates in ways directly pertinent to the issues in this case, and mandates a citizen's petition process to have particular non-digestible carbohydrates specially declared by the FDA to be dietary fiber.  Defendants ask the Court to examine the bracketed portions of the submitted excerpts, which clearly pertain to the issues in the Complaint.  The following are some highlights.

At page 11882 of Volume 79 of the Federal Register, the FDA stated: "Currently, there are no analytical methods that can distinguish between dietary fiber (soluble and insoluble fiber) and non-digestible carbohydrates that do not meet the definition of dietary fiber."

At page 11884, the FDA stated that it was proposing "record requirements to support nutrient declarations in labeling for … dietary fiber, soluble fiber, [and] insoluble fiber … so that we can determine compliance with labeling requirements and take enforcement action, as needed."  The FDA then stated: "For these nutrients, as explained in section II.N, there is no AOAC official method of analysis … or other reliable or appropriate analytical procedure … available for FDA to quantify the declared amount of the nutrient, under certain circumstances."

| | 11 | MEMORANDUM SUPPORTING DEF. PRIMARY JURISDICTION MOTION |

Pages 11909 through 11912 are the key pages that pertain to the fiber issues in this case.  At page 11909, the FDA stated: "[Existing] FDA regulations do not establish a definition for dietary fiber.  There is no specific chemical definition for dietary fiber."  On that page, the FDA discussed various alternative definitions including the CODEX definition alluded to in Mr. Takeda's Complaint (with which the FDA's proposed wording differs).

The FDA stated: "Therefore, we are proposing to amend [21 CFR] Section 101.9(c)(6)(i) to include the following definition for dietary fiber: (1) Non-digestible soluble and insoluble carbohydrates (with 3 or more monomeric units) and lignin that are intrinsic and intact in plants;[7] (2) isolated and synthetic non-digestible carbohydrates (with 3 or more monomeric units) that FDA has granted be included in the definition of dietary fiber, in response to a petition submitted to FDA under Section 10.30 (21 CFR 10.30) demonstrating that such carbohydrates have a physiological effect(s) that is beneficial to human health; or (3) isolated and synthetic non-digestible carbohydrates (with 3 or more monomeric units) that are the subject of an authorized health claim.  We invite comment on the proposed definition of dietary fiber."  79 Federal Register 11909.

---

[7]   A container of berries would be an example of a product containing category (1) dietary fiber.

On pages 11909 and 11910, the FDA discussed the citizen petition process for getting a non-digestible carbohydrate classified as a category (2) "dietary fiber" by providing evidence to the FDA "to demonstrate the physiological effects that are beneficial to human health."  The agency said: "We intend to issue guidance to industry on submissions to demonstrate physiological effects that are beneficial to human health."

On pages 11910 and 11911, the FDA discussed appropriate methods for analyzing and measuring dietary fiber.  On page 11912, the FDA addressed the caloric value for soluble fiber.

At page 11959, the FDA announced its intention that any final version of the Rule resulting from the rulemaking process will become effective 60 days after the date of the final Rule's publication (but industry compliance would not be required until 2 years after the effective date).

Quest intends to submit a citizen's petition concerning IMO soon after the Rule becomes effective so the FDA will declare IMO to be a dietary fiber.

Defendants request, pursuant to Rule 201 of the Federal Rules of Evidence, that the Court take judicial notice of the above-described relevant portions of the proposed Rule that they have submitted to the Court.

"It is appropriate to take judicial notice of … information [that] was made publicly available by government entities [including on websites]."  *Daniels-Hall v. National Education Association*, 629 F.3d 992, 998 (9th Cir. 2010).

| | 13 | MEMORANDUM SUPPORTING DEF. PRIMARY JURISDICTION MOTION |
|---|---|---|

Judicial notice is routinely taken of regulations and other items published by administrative agencies.  *See* R. Jones, G. Rosen, W. Wegner & J. Jones, <u>Rutter Group Practice Guide: Federal Trials and Evidence</u> ¶¶ 8:849, 8:861, 8:863, 8:868, 8:874 (Rutter Group 2014) ("judicial notice may be taken of administrative agency actions, regulations, rules, and reports").

For example, in *In re Amgen Inc. Securities Litigation*, 544 F.Supp.2d 1009, 1023 (C.D. Cal. 2008), Judge Philip Gutierrez took judicial notice of product labels "taken from the FDA website" and "a public health advisory posted on the FDA website."

Many district court judges have taken judicial notice of FDA-issued materials in the course of deciding primary jurisdiction motions in putative class action cases.  *See, e.g.*, *Swearingen v. Attune Foods, Inc.*, 2014 WL 2094016 at *1-*2 (N.D. Cal. May 19, 2014) (judicial notice taken of "the FDA-issued 'Notice; reopening of comment period; request for comments, data, and information' for the draft guidance for industry entitled 'Ingredients Declared as Evaporated Cane Juice'"); *Figy v. Lifeway Foods*, 2014 WL 1779251 at *3 & n.1 (N.D. Cal. May 5, 2014) ("The Court grants Plaintiff's unopposed request to judicially notice various FDA publications and documents, including guidance documents, warning letters, and policy statements….").

This Court should thus take judicial notice of the relevant portions of the FDA proposed labeling Rule.

| | 14 | MEMORANDUM SUPPORTING DEF. PRIMARY JURISDICTION MOTION |

**IV.**

**UNDER THE PRIMARY JURISDICTION DOCTRINE, A COURT MAY EXERCISE ITS DISCRETION TO STAY A CASE OR DISMISS IT WITHOUT PREJUDICE WHERE DEFERENCE TO AN ADMINISTRATIVE AGENCY IN THE FIRST INSTANCE IS APPROPRIATE, ESPECIALLY WHERE THE AGENCY IS ACTIVELY CONSIDERING MATTERS RELEVANT TO A KEY ISSUE IN THE CASE.**

The primary jurisdiction "doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Clark v. Time Warner Cable*, 523 F.3d at 1114.  A court should not "run[ ] the risk of issuing a decision that is inconsistent with the FDA's regulatory scheme or later-issued guidance."  *Haggag v. Welch Foods, Inc.*, 2014 WL 1246299 at *6 (C.D. Cal.  March 24, 2014) (action dismissed without prejudice).

Primary jurisdiction "is a 'doctrine used by the courts to allocate initial decisionmaking responsibility between agencies and courts where … jurisdictional overlaps and potential for conflicts exist.'"  *Syntek Semiconductor Co., Ltd. v. Microchip Technology Incorporated*, 307 F.3d 775, 780 (9th Cir. 2002) (Ninth

Circuit remanded for primary jurisdiction stay); *accord* <u>Federal Civil Procedure</u> at ¶¶ 2:4621-2:4625.

"Although the question is a matter for the court's discretion, courts in considering the issue have traditionally employed such factors as (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek*, 307 F.3d at 781.

Courts sometimes stay or dismiss actions under the primary jurisdiction doctrine where deferring to agency expertise is appropriate even though the agency has not specifically addressed a topic at all. For example, in *Watkins v. Vital Pharmaceuticals, Inc.*, 2013 WL 5972174 (C.D. Cal. November 7, 2013), Judge Otero dismissed without prejudice a food labeling case revolving around the use of the phrase "high impact" on the wrappers of protein bars, deferring to the FDA on an "issue of first impression" where there were no FDA rules, regulations, or policy statements on point. *Id.* at *4 ("Plaintiff may petition the FDA to take administrative action").[8]

---

[8] *See also Astiana v. Hain Celestial Group, Inc.*, 905 F.Supp.2d 1013, 1016 (N.D. Cal. 2012) (case dismissed because "[i]n the absence of any FDA rules or regulations (or even informal policy statements) regarding the use of the word 'natural' on cosmetics labels, the court declines to make any independent determination of whether defendants' use of 'natural' was false or misleading").

| | 16 | MEMORANDUM SUPPORTING DEF. PRIMARY JURISDICTION MOTION |
|---|---|---|

On the other hand, courts are particularly likely to grant a primary jurisdiction motion in the opposite situation where (as in this case) an agency like the FDA is actively considering the issue at the core of a case. Indeed, commentators and courts have noted that in addition to the traditional listing of four factors, "courts [also] seem heavily influenced by a fifth factor: whether the FDA [or another agency] has shown any interest in the issues presented by the litigants." *Greenfield v. Yucatan Foods, L.P.*, __ F.Supp.2d __, 2014 WL 1891140 at *4 (S.D. Fla. May 7, 2014) (action stayed).

For example, the dismissal affirmed by the Ninth Circuit in *Clark v. Time Warner Cable* was ordered in a situation where "the FCC's Notice of Proposed Rulemaking demonstrates that the agency is actively considering how it will regulate VoIP services and that the agency's development of a uniform regulatory framework to confront this emerging technology is important to federal telecommunications policy." *Id.*, 523 F.3d at 1115.

In *Taradejna v. General Mills, Inc.*, 909 F.Supp.2d 1128 (D. Minn. 2012), a class action was brought alleging that Greek yogurt products were mislabeled because they were not truly "Greek" and did not meet the FDA's standards of identity for yogurt. "In 2009, the FDA issued a proposed Rule which would allow for certain modifications to the standards of identity for yogurt" including the allowance of an ingredient at issue in the case. *Id.*, 909 F.Supp.2d at 1131. The proposed Rule was not finalized as of the time of the *Taradejna* case.

| | 17 | MEMORANDUM SUPPORTING DEF. PRIMARY JURISDICTION MOTION |

The *Taradejna* Court dismissed the case and directed the parties to initiate proper proceedings with the FDA.  The Court noted that the proper ingredients and labeling for yogurt were questions that fall "squarely within the competence and expertise of the FDA" and that "issues of food labeling are sufficiently complex that they 'are best left to FDA for consideration prior to judicial review.'"  *Id.* at 1134.

Even though the proposed Rule in that case had been pending for three years and no hearing had been held yet, the Court stated: "[G]iven that the FDA has issued its 2009 Proposed Rule on the standard of identity for yogurt, it would be imprudent for the Court, at this juncture, to substitute its judgment for that of the Agency's while revision of the standard of identity is pending."  *Id.* at 1135 ("the FDA's ultimate decision on the permitted ingredients in yogurt will ensure national uniformity in labeling, utilizing the Agency's special expertise in this regard").

The "evaporated cane juice" cases, discussed in the next Section, are a perfect example of the wisdom of courts applying the primary jurisdiction doctrine when the FDA is in the midst of taking action that impacts on the issues in food labeling litigation.

**V.**

**THE RECENT USE OF THE PRIMARY JURISDICTION DOCTRINE BY MANY JUDGES IN ORDER TO DEFER TO THE FDA IN THE**

MEMORANDUM SUPPORTING DEF. PRIMARY JURISDICTION MOTION

**EVAPORATED CANE JUICE CLASS ACTION CASES IS**

**INSTRUCTIVE AS TO THE WISDOM OF APPLYING**

**THE DOCTRINE HERE.**

So many consumer class actions about food labeling have been filed in the Northern District of California that it has come to be called the "Food Court." Over 50 such actions have involved products labeled as containing "evaporated cane juice," a term which the class action plaintiffs' bar maintains is misleading because it fools some consumers into not realizing it is a type of sugar. The theory rests in part on an October 2009 draft non-binding guidance in which the FDA expressed the tentative view that "the term 'evaporated cane juice' is not the common or usual name of any type of sweetener, including dried cane syrup" and invited public comment.

Prior to March 2014, courts split on whether to invoke the primary jurisdiction doctrine in evaporated cane juice cases. But then everything changed. In March 2014, the FDA published a Notice in the Federal Register reopening the comment period on the 2009 draft guidance and emphasizing that a final decision was yet to be made on what to call evaporated cane juice.

Since the March 2014 reopening of the comment period on the 2009 draft guidance, almost every court to thereafter address the issue has ruled in favor of deferring to the FDA, given that the FDA has now shown an active interest in the topic.

| | 19 | MEMORANDUM SUPPORTING DEF. PRIMARY JURISDICTION MOTION |
|---|---|---|

In *Swearingen v. Attune Foods, Inc.*, 2014 WL 2094016 at *3 (N.D. Cal. May 19, 2014), the Court dismissed the case because "the FDA is engaged in active rulemaking on this issue."  Likewise, in *Figy v. Lifeway Foods*, 2014 WL 1779251 at *4-*5 (N.D. Cal. May 5, 2014), the action was stayed on the grounds that doing so "will enhance the Court's decision-making efficiency by allowing the court to benefit from the FDA's definitive guidance on the issue and assure uniform application of regulatory law by preventing the Court from potentially issuing a decision contrary to the FDA's formal position on ECJ, which it is currently and actively in the process of revising."

In *Avila v. Redwood Hill*, 2014 WL 2090045 (N.D. Cal. May 19, 2014), Judge Davila stated that in the wake of the FDA's March 2014 Notice reopening the comment period, he had changed his view on the applicability of the primary jurisdiction doctrine to evaporated cane juice litigation.  He dismissed the case without prejudice because "the agency is in the process of making a determination on a key issue in the litigation."  *Id.* at *3 ("If the Court proceeds with this action and issues a decision that is contrary to the FDA's formal position on ECJ, it would disrupt the uniform application of the FDA's regulatory rules").

Judge Sammartino recently dismissed an evaporated cane juice case in the Southern District on the same basis as the Bay Area federal judges have been doing.  According to that Court, "[a]llowing the FDA to resolve this matter in the first instance would permit the Court to benefit from the agency's technical

| | 20 | MEMORANDUM SUPPORTING DEF. PRIMARY JURISDICTION MOTION |
| --- | --- | --- |

expertise" and "the FDA's articulation of its considered view on this matter will undoubtedly affect issues being litigated in this action."  *Saubers v. Kashi Company*, 2014 WL 3908595 at *3-*4 (S.D. Cal. August 11, 2014) (listing many cases using the doctrine to defer to the FDA).

The reasoning of the courts in the evaporated cane juice cases is directly applicable to the situation in our case with the FDA proposing new dietary fiber regulations and a mandatory citizen's petition process for approval of isolated fibers added in the food manufacturing process (such as IMO).

## VI.

## UNDER THE CIRCUMSTANCES, THIS COURT SHOULD EXERCISE ITS PLENARY DISCRETION TO STAY THIS CASE OR DISMISS IT WITHOUT PREJUDICE PENDING THE FINALIZING OF THE PROPOSED NEW REGULATIONS ON DIETARY FIBER AND AN FDA RESPONSE TO A CITIZEN PETITION BY QUEST CONCERNING THE IMO FIBER AT THE HEART OF PLAINTIFF'S MISLABELING CLAIMS.

The pragmatic, common sense reasons for applying the primary jurisdiction doctrine in this case are abundantly clear.  And the main factors used in making such decisions all point in favor of a stay or a dismissal until the FDA's proposed new regulations are finalized and the FDA acts on an IMO citizen's petition by Quest.

"Congress has granted the FDA regulatory authority over … food labeling as part of the Food, Drug, and Cosmetic Act."  *Watkins*, 2013 WL 5972174 at *3. "'Food labeling is within the special competence of the FDA' [and] [t]he FDCA imposes a comprehensive regulatory framework that requires uniformity in administration."  *Figy v. Lifeway Foods*, 2014 WL 1779251 at *2.

The liability issues raised by Mr. Takeda in his Complaint are highly technical in nature and concern dietary fiber measurement and labeling matters that are not only in the FDA's area of expertise[9] but, most importantly, are the subject of ongoing rulemaking activities by the FDA.  And under the proposed Rule on dietary fiber, all food manufacturers (including Quest) who use isolated fiber (that is not in its intact, original state) will have to go through a citizen's petition administrative process to get FDA approval to label it as dietary fiber.

If the case is not stayed or dismissed without prejudice, a jury will be tasked with deciding biochemistry issues that would be better left to the FDA to determine in the first instance under the citizen's petition procedure mandated by the proposed Rule.  And what happens if the jury reaches a result at trial that is completely at odds with either a subsequent final version of the FDA Rule or the FDA's eventual response to a Quest citizen petition on IMO?  Depending on the

---

[9]  "Agency expertise is the most common reason that courts apply the doctrine of primary jurisdiction."  *Taradejna*, 909 F.Supp.2d at 1134.

MEMORANDUM SUPPORTING DEF. PRIMARY JURISDICTION MOTION

timing of FDA action and an appeal, the Ninth Circuit would presumably reverse a judgment based on such a verdict.

Plaintiff may argue in opposition that the FDA's process of finalizing the Rule and then ruling on a Quest citizen petition could take a long time. The comment period on the proposed Rule has closed. It is true that there is no way of knowing how long it will be before the Rule is finalized. But if the Court stays the action rather than dismissing it, there could be no statute of limitations problems.

When it comes to a citizen's petition after the Rule is finalized, the FDA is supposed to respond within 180 days (at least with a tentative decision). *See Haggag v. Welch Foods, Inc.*, 2014 WL 1246299 at *7 & n.2 (C.D. Cal. March 24, 2014) (discussing the citizen's petition process under 21 CFR Section 10.30 in the context of a primary jurisdiction dismissal). If a stay is granted, the Court could set a date for the parties to give the Court a status update.

In any event, regardless of how long the FDA process may take, staying or dismissing without prejudice this lawsuit under the primary jurisdiction doctrine is the right thing to do.

## VII.

## CONCLUSION

For the foregoing reasons, the Court is requested to exercise its wide discretion to stay this action under the primary jurisdiction doctrine until after the directly relevant FDA rule addressing dietary fiber is finalized and the FDA

| | 23 | MEMORANDUM SUPPORTING DEF. PRIMARY JURISDICTION MOTION |

responds to a citizen's petition by Quest regarding IMO, the substance at the heart of Plaintiff's claims of false and misleading labeling of Quest bars.

Such FDA actions might moot this litigation entirely but even if they do not, the Court will be aided by the FDA's determinations and the policies underlying the primary jurisdiction doctrine will be furthered by such a stay. (Alternatively, the Court could dismiss this case without prejudice.)

Dated: September 26, 2014.                    Respectfully submitted,

                                              George C. Salmas
                                              Michael R. Hambly

                                              By: /s/: *Michael R. Hambly*
                                                    Michael R. Hambly

                                              Attorneys for Defendants
                                              QUEST NUTRITION, LLC
                                              and GENERAL NUTRITION
                                              CENTERS, INC.

MEMORANDUM SUPPORTING DEF.
      PRIMARY JURISDICTION MOTION